# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 12, 2006 Session

## STATE OF TENNESSEE v. ANDRE DOTSON

**Appeal from the Criminal Court for Shelby County**
**Nos. 04-00868; 04-00869; 04-00870; & 04-00871     Joseph B. Dailey, Judge**

---

### No. W2005-01594-CCA-R3-CD - Filed November 29, 2006

---

The defendant, Andre Dotson, appeals from his 2005 Shelby County Criminal Court jury convictions on two counts of aggravated robbery and two counts of robbery. On appeal, the defendant claims that the trial court erred (1) in joining four indictments for trial, (2) in severing, on the morning of trial, the charges against a co-defendant, (3) in excluding the co-defendant's pretrial statement as evidence offered by the defendant, (4) in failing to hold that the evidence was insufficient to support three of the convictions, (5) in denying the defendant's motion to allow him to sit with his attorney at the counsel table, (6) in failing to instruct the jury as to the shortcomings of eyewitness testimony, and (7) in sentencing the defendant as a multiple offender on two convictions and as a persistent offender on two convictions. We reverse one conviction of robbery but affirm the court's judgments, as modified.

### Tenn. R. App. P. 3; Judgments of the Criminal Court are Reversed in Part and Affirmed in Part.

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined. JOHN EVERETT WILLIAMS, J., filed a separate dissenting opinion.

William C. Gosnell, Memphis, Tennessee (on appeal); and Melvin J. Werner, Memphis, Tennessee (at trial), for the Appellant, Andre Dotson.

Michael E. Moore, Acting Attorney General & Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Nicole Germain, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The defendant stands convicted of four robberies, two of them aggravated by the use of a deadly weapon. The convictions established that between July 11 and August 27, 2003, the defendant and another individual robbed cases of cigarettes from four wholesale distributor trucks

making deliveries to retail stores. The alignment of offenses and the respective resulting convictions and sentences are as follows:

| Indictment | Offense date | Victim | Charge/conviction | Sentence | Alignment |
| --- | --- | --- | --- | --- | --- |
| 871 | July 11 | Herbert Crain | robbery | 10 years | Consecutive to all others |
| 870 | August 5 | Gabriel Shears | robbery | 10 years | Consecutive to all others |
| 869 | August 13 | Willis Yarbrough | aggravated robbery | 17 years | Consecutive to all others |
| 868 | August 27 | DeAngelo Mitchell | aggravated robbery | 17 years | Consecutive to all others. |

Herbert Crain testified that he was employed as a delivery truck driver by Forrest City Grocery in Memphis and on July 11, 2003, was unloading merchandise at Liberty Mart from the side door of his truck's trailer. His assistant, Kevin Young, had taken a load of merchandise into the store when a man entered the trailer and told Mr. Crain to leave the trailer. When Mr. Crain unsuccessfully tried to close the trailer door to trap the intruder inside, the intruder, while threatening to shoot Mr. Crain, "put[] his hand low." Mr. Crain testified that the intruder and a second man loaded 128 cartons of cigarettes into a blue "mid to late 80's" Chevrolet Lumina bearing a dealer tag and drove away. Mr Crain could not identify either of the men. Mr. Young, Mr. Crain's assistant, testified that, when he came out of the store to return to the truck, he clearly saw the intruder in the trailer. In the courtroom, Mr. Young positively identified the defendant as one of the robbers and testified that, on September 5, 2003, he had selected the defendant's picture from a photographic array furnished by the police.

Another employee of Forrest City Grocery, Gabriel Shears, testified that on August 5, 2003, he was unloading merchandise from a delivery truck at a BP store on Shelby Drive. While he was placing merchandise on a dolly beside the truck, the truck driver, Keith Richardson, was inside the truck trailer. A car bearing two men arrived, one of whom entered the trailer and started moving cases of cigarettes to the door. The second man loaded the cases in the car. Mr. Shears testified that the man in the trailer told Mr. Richardson to "get back," and the two tussled "a little bit." He heard the man tell Mr. Richardson that he would blow Mr. Richardson's brains out "or something like that." Although Mr. Shears admitted that he did not see a gun, he saw the intruder in the trailer grab his jeans pocket, and realizing the man might have a gun, Mr. Shears became afraid. He testified that, on September 5, 2003, he viewed a photographic array furnished by the police and selected a picture of the defendant as the man who entered the trailer on August 5.

Willis Yarbrough testified that he drove a delivery truck for H.T. Hackney Company to a Walgreen's store in Shelby County on August 13, 2003. He had no assistant and was inside the cargo area of the truck when a man entered and told him to go to the front of the cargo area. Mr. Yarbrough was afraid and complied, and the man began passing cases of cigarettes to a second man on the ground. At trial, he identified the defendant as the intruder and further testified that, on September 12, 2003, he selected the defendant's picture from a photographic array furnished by the police.

DeAngelo Mitchell testified that on August 27, 2003, he was employed by Forrest City Grocery as an assistant on a delivery truck and was unloading merchandise at Yung's Food Market. While he was inside the trailer, a man entered, raised his shirt to reveal the butt of a pistol, and told Mr. Mitchell not to move. The presence of the gun scared Mr. Mitchell. The man began moving cases of cigarettes to the trailer door, and a second man put the cases into a "Delta '88" automobile that bore no license plate. Employees of Yung's Food Market called the police. At trial, Mr. Mitchell identified the defendant as the man who entered the trailer and affirmed that he had also selected the defendant's picture from a photographic array furnished by the police.

Memphis police officers testified that they apprehended the defendant and the second man on August 27, 2003. Responding to a call from Yung's, the police dispatcher described the robbers' car and the two men occupying it. When a police officer saw the dark Oldsmobile and tried to detain it, it sped away. More than one police cruiser pursued the car until it stopped, and the two occupants fled on foot. The officers gave chase and apprehended the defendant and a second man. Inside the Oldsmobile, they found cases of cigarettes.

The officers determined that the Oldsmobile's owner was a Ms. Victor Frayser, who was a girlfriend of the defendant's August 27 companion. Ms. Frayser consented to a search of a Chevrolet Lumina parked at her residence, and inside the trunk, the officers found four to six cases of cigarettes.

Officer David Ayers admitted that the Memphis Police Department had received reports of cigarette thefts from delivery trucks for about 90 days preceding July 11, 2003.

After the State rested its case in chief, the defendant conducted a voir dire of Robert Finley,[1] a co-defendant whose trial had been severed from that of the defendant. Mr. Finley invoked his constitutional right not to testify in the defendant's trial. The defendant then moved to introduce into evidence Mr. Finley's pretrial statement, but the trial court denied the motion.

The defendant testified in his own behalf that he committed a theft from the Forrest City Grocery truck at Yung's on August 27, 2003, but he denied that he was involved in any of the other charged offenses. He denied that the August 27 theft was a robbery and denied that he

---

[1] In his testimony, the defendant refers to Mr. Finley as "Rodney."

possessed a weapon during that offense. He testified that he had been previously incarcerated for several months and had not been released until July 4, 2003.

Based upon the evidence, the jury convicted the defendant of the robberies of Mr. Crain and Mr. Shears and of the aggravated robberies of Mr. Yarbrough and Mr. Mitchell. We turn to the issues raised by the defendant on appeal.

*I. Severance of Offenses*

In the defendant's first issue, he claims that the trial court erred "in allowing the defendant to be tried on all four indictments at one trial." Specifically, he posits that the State moved orally and belatedly to consolidate four indictments for trial and that the trial court erroneously held that the State established a common scheme or plan as a basis for consolidation. The State responds that, even though the motion to consolidate was made orally on the morning of the first scheduled day for trial, the trial court did not err in granting the motion. Alternatively, the State claims that, if the consolidation was error, it was merely harmless error.

The analysis of severance issues is similar to peeling an onion. Because of the interplay of disparate rules, the removal of a layer often exposes another layer that must be exfoliated. We begin with the standard and scope of our review.

A. Standard and Scope of Review

The issue of the propriety of a trial court's consolidation of indictments or severance of charges is reviewed on appeal for abuse of discretion. *State v. Spicer*, 12 S.W.3d 438, 442 (Tenn. 2000); *State v Shirley*, 6 S.W.3d 243, 247 (1999). The trial court's resolution of the issue will be reversed only when that court (1) applied an incorrect legal standard or (2) reached an illogical decision that resulted in injustice to the complaining party. *Spicer*, 12 S.W.3d at 442.

To consolidate separate indictments under Tennessee Rule of Criminal Procedure 8(b), the State need show nothing more than that the offenses are "of the same or similar character." Tenn. R. Crim. P. 8(b)(2); *Spicer*, 12 S.W.3d at 443. However, the legal standard applied to the issue of mandatory severance of charges, as opposed to consolidation, is different: A defendant has an "absolute right" pursuant to Tennessee Rule of Criminal Procedure 14(b)(1) "to a severance of offenses permissively joined, unless the offenses are parts of a common scheme or plan and the evidence of one offense 'would be admissible upon the trial of the others.'" *Spicer*, 12 S.W.3d at 443; *see* Tenn. R. Crim. P. 14 (b)(1). In *Spicer*, our supreme court also held that, "when a defendant objects to a pre-trial consolidation motion by the state, the trial court must consider the motion by the severance provisions of [Tennessee] Rule [of Criminal Procedure] 14(b)(1), not the 'same or similar character' standard of Rule 8(b)." *Spicer*, 12 S.W.3d at 443. In other words, a defendant's objection to the State's motion to consolidate charges from separate indictments transforms the trial

-4-

court's inquiry into one of whether the defendant is *entitled* to a severance. *See* Tenn. R. Crim. P. 14(b)(1).[2]

In the present case, the defendant did not move for a severance of charges, but he did object to the State's motion to consolidate. Thus, despite the absence of a defense motion to sever, we review the issue for abuse of the trial court's discretion in determining whether the various offenses shared a common scheme or plan and whether evidence of one would be admissible in the trial of the others.

To reiterate, this standard is more demanding than the one applied to *permissive joinder* of offenses, which involves a determination that the offenses "are of the same or similar character." *See* Tenn. R. Crim. P. 8(b)(2). We note that the offenses in the present case were surely of the same or similar character, but that characterization does not resolve the issue whether the trial court should have respected the right of the defendant to have the charges severed.

B. Trial Court Procedure

Due to the nature of the issue, the determination whether multiple charges based on alleged multiple offenses should be joined or separated for trial must be presented and resolved *before* trial. *Bruce v. State*, 213 Tenn. 666, 670, 378 S.W.2d 758, 760 (1964); *see* Tenn. R. Crim. P. 13(b) (providing that trial court may order severance of offenses before trial); Tenn. R. Crim. P. 14(a)(1)(A) (providing that defendant, except in the event of a later arising ground, shall move to sever offenses "before trial"). When such an issue is presented, the trial court must resolve it before trial from the "evidence and arguments presented at [a consolidation/severance] hearing," *Spicer*, 12 S.W.3d at 445, by determining whether (1) the multiple offenses were part of a common scheme or plan, (2) evidence of one is relevant to some material issue in the trial of the other offenses, and (3) "the probative value of the evidence of other offenses is not outweighed by the prejudicial effect." *Id.*[3]

_____

[2] *Spicer* teaches that

> a rule that requires a defendant to formally move for a severance immediately after the objection to consolidation is overruled makes little practical sense[,] emphasize[s] technicality of procedure over substantive fairness, . . . add[s] unjustifiable expense and delay to the proceedings, and . . . defeat[s] the very purposes to be served by the Rules of Criminal Procedure.

Spicer, 12 S.W.3d at 444.

[3] We acknowledge that *Spicer* characterizes the relevancy portion of the severance inquiry as a determination whether "evidence of *each* offense is relevant to some material issue in the trial of *all* the other offenses." *Spicer*, 12 S.W.3d at 445 (emphasis added) (citing Tenn. R. Evid. 404(b)(2)). However, Tennessee Rule of Evidence 404(b)(2) does not contain this language. Moreover, because the broader adjudication at hand is one of mandatory severance, which is governed by Tennessee Rule of Criminal Procedure 14(b)(1), the formula for "other" crimes' admissibility in

(continued...)

> [B]ecause the trial court's decision of whether to consolidate offenses is determined from the evidence presented at the [pretrial] hearing, appellate courts should usually only look to that evidence, along with the trial court's findings of fact and conclusions of law, to determine whether the trial court abused its discretion by improperly joining the offenses.

*Id.* at 438. We emphasize that the standard promulgated by our supreme court is a combination of the provisions of Tennessee Rule of Criminal Procedure 14(b)(1) and Tennessee Rule of Evidence 404(b). *See* Tenn. R. Evid. 404(b) (limiting the use of character evidence against an accused to situations wherein the evidence is relevant to "other purposes" than to show that the defendant had a propensity to commit the offense on trial).

In the present case, the issue of consolidation/severance arose when, on the morning of the first scheduled day of trial, the State moved orally to consolidate the charges contained in four separate indictments. Although the defendant opposed the motion and thereby availed himself the opportunity to assert his *right* to a severance, neither party introduced any evidence in the hearing. The State argued that in all four robberies, the two perpetrators stole cigarettes from trucks delivering merchandise to retail businesses; the perpetrators used dark-colored automobiles; the perpetrators worked in tandem, one moving cases of cigarettes to the truck door while the other loaded them into the car; and in some cases, the cars used bore no license plates. The defendant argued that "the same scheme" was not evident because the vehicles used in the robberies were different and because similar robberies had been committed in Memphis both before July 11, 2003, while the defendant was incarcerated on a prior conviction, and after the defendant was apprehended and confined on the present charges.

From our reading of the trial court's findings, we conclude that the court merely determined that the indictments *may* be joined for trial. Although the trial judge mentioned the

---

[3](...continued)

Rule 14(b)(1) is controlling. It provides that "the evidence of *one* would be admissible in the *trial* of the *others*." Tenn. R. Crim. P. 14(b)(1) (emphasis added). It is likely that the "each" and "all" language of *Spicer* resulted from the specific two-indictment consolidation issue presented in that case, but when the proposed consolidation is of at least three or more charges, the "one" and "others" language of Rule of Criminal Procedure 14(b)(1) seems to be not only controlling but more apt as well. *State v. Burchfield*, 664 S.W.2d 284, 286 (Tenn. 1984) (commenting that the "primary inquiry into whether a severance should have been granted under Rule 14 is whether the evidence of one crime would be admissible in the trial of the other if the two counts of the indictment had been severed"). For instance, assume four "signature" offenses are charged, and the defendant is captured – and hence identified – in only charge number four. The defendant is not identified as the culprit in charges one through three, except on the basis of his committing crime four, which bears the same signature as the other three. *See State v. Moore*, 6 S.W.3d 235, 239 (1999) ("Typically, offenses that are parts of a common scheme or plan are offered by the State to establish the identity of a perpetrator. Indeed, identity is usually the only relevant issue supporting admission of other offenses when the theory of the common scheme or plan is grounded upon a signature crime.") (citations omitted). It makes no sense to say that joinder of the charges in a single trial is precluded because evidence of the crime in charge one, for example, would not be admissible in a trial on charge four. In this sense, there can be no rule of reciprocity, though *Spicer* may suggest otherwise.

presence of a "common scheme or plan," immediately after that comment he stated, "While, perhaps, a mandatory joinder is not in order, certainly a permissive joinder would be appropriate in this instance. And as a matter of judicial economy under Rule 8(b), these matters should be joined." *See* Tenn. R. Crim. P. 8(b) (explaining the bases for permissive joinder of offenses).[4] We infer from the court's comments that it merely determined that the offenses alleged were of a same or similar character. *See* Tenn. R. Crim. P. 8(b)(2) (providing that offenses of a same or similar character may be consolidated).[5]

C. Adjudication.

### 1. Form and Timing of State's Motion to Consolidate

The defendant complains that the State's motion to consolidate was not submitted to the trial court in written form. We recognize, however, that a "motion – except one made during a trial or hearing – shall be in writing *unless the court permits it to be made orally*." Tenn. R. Crim. P. 47(b) (emphasis added). The record shows that, in the present case, the trial court permitted the State to move orally to consolidate. Thus, no error attends the oral form of the motion.

Next, the defendant complains that the State's morning-of-trial motion to consolidate was untimely. We agree that, in general, a rule or statutory provision that a specified action must be taken "prior to trial" means that it must be taken prior to the day of trial. *State v. Stephenson*, 752 S.W.2d 80, 83 (Tenn. 1988); *State v. Aucoin*, 756 S.W.2d 705, 709 (Tenn. Crim. App. 1988). Despite that *Spicer* directs the trial court to treat the State's Rule 8 motion to consolidate, when challenged by the defendant, as a Rule 14 motion to sever, and despite that our supreme court and Rule 14(a)(1)(A) generally direct that the defendant's motion to sever be made prior to trial, we find no provision that requires the State to file a motion to consolidate prior to trial. Neither Tennessee Rule of Criminal Procedure 8 nor Rule 13 mention filing the motion to consolidate before trial. Thus, we cannot conclude that the initial motion to consolidate was untimely. Even if it were, we see no prejudice to the defendant and would deem any such error harmless. *See* Tenn. R. Crim. P. 52(a). When the State moved the consolidation of the indictments, the defendant made a cogent argument that advanced his Rule 14 claim that the counts should remain severed.[6] The defendant did not claim to be surprised, did not articulate a reason why the consolidation caused a strategic or tactical problem, and did not move for a continuance. Indeed, the actions of the parties suggest that

---

[4] The trial court conditioned the consolidation of offenses upon the State electing to sever the defendants for trial. The State accepted the offer, and the defendant proceeded to trial alone on all four indictments.

[5] After making his findings as outlined above, the trial judge commented that he thought that, in the case of separate trials, evidence of some of the additional offenses would be admissible in a trial of a single charge, but the court apparently mentioned the issue of admissibility merely in support of its view that consolidation promoted judicial economy.

[6] He also objected to the severance of the co-defendant, arguing that if two defendants stand trial at once, eyewitnesses might have difficulty in distinguishing between them for purposes of in-court identification.

the defendant was aware that the State would seek consolidation. At any rate, we believe that any error in permitting a morning-of-trial motion to consolidate was harmless.

2. Abuse of Discretion

As we detailed above, the applicable abuse-of-discretion standard of review asks whether the trial court (1) applied an incorrect legal standard or (2) reached an illogical conclusion resulting in injustice to the complaining party. *See Spicer*, 12 S.W.3d at 442. We hold that the trial court applied an incorrect legal standard but that the error was harmless. We also conclude in the alternative, that the trial court's legal determinations, if inapt, did not result in injustice to the defendant.

a. Application of Legal Standard

In determining that the four indictments were permissibly joined for trial, the trial court applied an incorrect standard. As shown above, pursuant to *Spicer*, the court should have analyzed the issue as one of the defendant's Rule 14(b)(1) right to a severance; thus, it should have determined whether severance was precluded by the existence of a common scheme or plan and by the admissibility of evidence of one of the offenses in the trials of the others.

The error, however, is subject to harmless error analysis. *See* Tenn. R. Crim. P. 52(a); *Spicer*, 12 S.W.3d at 447. "In most severance cases, 'the line between harmless and prejudicial error is in direct proportion to the degree . . . by which proof exceeds the standard required to convict. . . .'" *Spicer*, 12 S.W.3d at 447-48 (quoting *Delk v. State*, 590 S.W.2d 435, 442 (Tenn. 1979)). Although we recognize in the present case that the consolidation could have had a "piling on" effect, we discern that the independent evidence of the defendant's guilt of each and every charge was very strong and that a jury would have convicted him of the crimes based upon cogent identification testimony.

*State v. Shirley,* 6 S.W.3d 243 (Tenn. 1999)*,* affords a revealing contrast to the present case. In *Shirley*, our high court adjudicated reversible error resulting from the trial court's failure to sever robbery offenses. The prosecution's witnesses' evinced credibility issues, and the evidence of the four offenses on trial together tended to bolster the weaker witnesses. *Id.* at 251. In the present case, we discern no real credibility issues among the State's witnesses. The State presented eyewitnesses who positively identified the defendant in a pretrial photographic array and identified him again at trial. None of these witnesses was seriously impeached.

Based upon this review of the record and the law, we hold that the trial court's application of the wrong legal standard was harmless error.

b. The Propriety of the Trial Court's Legal Conclusions (Assuming that the Trial Court Did Intend to Apply the Standards of Rule 14 and *Spicer*).

As noted above, we recognize that, in ruling on the motion to consolidate/sever, the trial court used the phrase "common scheme or plan" and that, although the phrase may be an alternative basis for permissive consolidation of charges, *see* Tenn. R. Crim. P. 8(b)(1), it could also suggest that the trial court was speaking of the conjoined requirements for severance, *see id.* 14(b)(1) (providing for mandatory joinder unless the offenses are (1) part of a common scheme or plan and (2) evidence of one would be admissible in the trial of the others). The defendant challenges the "common scheme or plan" portion of this formula. Thus, in the event our supreme court rules on further review that we err in determining that the trial court incorrectly applied the standard of Tennessee Rule of Criminal Procedure 8(b)(2), we now review its conclusions on the hypothesis that it did adjudicate a Rule 14(b)(1) severance issue.

The challenged requirement for precluding a severance is that the charged offenses be parts of a common scheme or plan. *See* Tenn. R. Crim. P. 14(b)(1). The phrase "common scheme or plan" describes three types of compilations of otherwise discrete offenses: (1) offenses that feature such a distinctive design that they constitute "signature" crimes; (2) offenses that are integral to "a larger, continuing plan or conspiracy"; and (3) a set of offenses that form part of the same criminal transaction. *Shirley*, 6 S.W.3d at 248. In the present case, as in *Shirley*, *see id.*, the four offenses qualify if at all as a common scheme or plan, only if they are signature crimes. As is typical of signature crimes, the State sought to use the compilation of offenses as one means of establishing identity in the first three offenses (in which the defendant was not caught "red-handed"). *See, e.g., Shirley*, 6 S.W.3d at 248; *State v. McCary*, 922 S.W.2d 511, 514 (Tenn. 1996).

> However, before multiple offenses may be said to evince a distinctive design, the "modus operandi employed must be so unique and distinctive as to be like a signature." Although the offenses need not be identical in every respect, the methods used in committing the offenses must have "such unusual particularities that reasonable men can conclude that it would not likely be employed by different persons." Only when the method used to commit the crimes is so unique as to be like a signature can the inference of identity properly arise.

*Shirley*, 6 S.W.3d at 248 (citations and footnote omitted). The court should not "merely enumerate [the offenses'] similarities and differences" and should not classify offenses "as signature crimes if they lack a distinct modus operandi." *Id.*

In the present case, the State in the consolidation/severance hearing touted as similarities in the offenses: (1) the complicity of two men; (2) the selection of delivery trucks as targets; (3) the selection of cases of cigarettes as the objects of the robberies; (4) the means whereby one robber entered the cargo area of a truck and moved cases of cigarettes to the door for the other man to load into a car; and (5) the use of a dark-colored car with no license plates. This listing strikes us, however, more as an enumeration of similarities than as a "distinctive design." *See id.*

In reacting to the State's argument in the pretrial hearing, the trial court debunked the notion that similar "get-away" vehicles were used, specifically finding that a different car was used in each of the four robberies. Additionally, neither the use of a confederate to commit a robbery nor the selection of a delivery truck as a vulnerable target for stealing merchandise is hardly a novel idea. Also, from the record of the argument in the pretrial hearing, we learn that thefts of cigarettes from delivery trucks had been common in the Memphis area in the three months preceding July 11, 2003, a time when the defendant was incarcerated, and we infer that cigarettes were a commodity easily exchanged for cash in the "black market". Finally, we are unpersuaded that the method of one robber's entering the cargo area of a truck and moving cases to the door for his partner to load into a car is somehow distinctive. Frankly, we can think of no other common-sense way for two men to unload a truck by hand. In sum, as in *Shirley*, the various robberies at issue did not bear such distinctive features that they can be branded signature crimes. If the trial court held that a common scheme or plan existed, it erred.

Having reached this juncture, however, the defendant encounters the same barrier to reversal that blocked his way on the issue of applying an incorrect legal standard. The error is harmless in our view. In brief, the strong, affirmative testimony of credible eyewitnesses belies the claim that an erroneous joinder is the culprit that produced a conviction on each charge. *Cf. Shirley*, 6 S.W.3d at 250-51 (holding error not harmless; evidence of guilt was "not overwhelming" in that "most of the eye-witnesses could not positively identify" the defendant).

## II. Exclusion of Former Co-defendant's Pretrial Statement

The defendant claims that the trial court erred in excluding from his case-in-chief the statement that Finley gave to the Memphis police on August 28, 2003.

After the State rested its case-in-chief, the defendant conducted a jury-out voir dire examination of Finley and elicited his refusal to waive his right against self-incrimination to testify in the defendant's trial. Then, the defendant moved for leave to present Finley's August 28, 2003 statement as evidence to the jury. The defendant offered the statement as a hearsay-rule exception for statements against penal interest.

Finley gave the statement in the wake of being apprehended with the defendant the previous day during the pair's attempt to flee the robbery at Yung's. The stolen cigarettes were left in the back seat of the car when the two men abandoned it on foot in the sight and presence of the officers. In his pretrial statement, Finley acknowledged participating with the defendant in the robbery at Yung's, and he acknowledged that the Oldsmobile Delta '88 belonged to his "lady friend," Victor Frayser, who also owned the blue Chevrolet Lumina. Finley stated that he and the defendant were driving around looking for employment when they saw cigarettes being unloaded from the truck at Yung's. Finley recounted that the defendant left the car and got onto the truck. Finley removed the license plate from the Oldsmobile and loaded into the car the cases of cigarettes that the defendant brought to the truck door. In response to the question whether he saw the defendant "with a gun or anything that looked like a gun," Finley responded, "No."

-10-

In his motion for leave to admit Finley's statement, the defendant argued that the statement had a bearing on "whether there were any weapons used." The trial court denied the motion, holding that Finley's disavowal of weapon possession was self-serving and not contrary to his penal interest. The judge pointed out that Finley and the defendant had been caught "red-handed" and that Finley's admission of involvement in the August 27 robbery was merely gratuitous. The judge said, "[I]t seems to me that the way this is all being worded is an attempt to minimize the culpability. . . . It's a statement intended to avoid the consequences of criminal conduct."

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Generally, "[h]earsay is not admissible." *Id*. 802. Certain exceptions to the rule of exclusion of hearsay, however, are recognized. *See id*. 803 (enumerating exceptions that apply regardless of the declarant's availability at trial), 804 (enumerating exceptions that are applicable when the declarant is unavailable). One exception that applies when the declarant is unavailable allows a statement which, when made out of court, "so tended to subject the declarant to civil or criminal liability . . . , that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." *Id*. 804(b)(3). For purposes of Rule 804, "unavailability" includes an exemption "by ruling of the court on the grounds of privilege from testifying concerning the subject matter of the declarant's statement." Tenn. R. Evid. 804(a)(1).

The statement proffered by the defendant – Finley's negative answer to the question whether he had seen the defendant with a gun – was to be presented by the defendant for the truth of the matter asserted and was, therefore, hearsay. Thus, assuming that the defendant substantially demonstrated Finley's unavailability by eliciting his invocation of his right against self-incrimination, the issue before us is whether Finley's statement about not seeing the defendant with a gun so far tended to subject Finley to criminal liability that he would not have made the statement unless he believed it to be true. We agree with the trial court that the statement was inadmissible hearsay.

The context of the statement was that Finley and the defendant had been caught immediately after the robbery at Yung's Food Market with the stolen merchandise in their car. Being at least complicit in a claim of robbery supported by a witness' account of one of the robbers' using a gun, Finley faced prosecution for aggravated robbery. *See* T.C.A. § 39-13-402 (2003) (establishing as a Class B felony robbery accomplished "with a deadly weapon or by display of an article used or fashioned to lead the victim to believe it to be a deadly weapon" (aggravated robbery)); *id*. § 39-11-401 (2003) (establishing a person's criminal responsibility for an offense committed by another through the person's aiding or attempting to aid, with the requisite intent, the other person to commit the offense). Thus, in the context of being caught outright and with a claim of aggravated robbery afoot, it served Finley to claim that the offense was merely a theft or, at most, a simple robbery. Viewed in that light, Finley's comment about not seeing the defendant with a gun was self-serving and bore no indicia of reliability.

-11-

This court has before viewed in "context" statements offered as Rule 804(b)(3) exceptions. In *State v. Shinny L. Leverett*, No. 02C01-9509-CR-00254 (Tenn. Crim. App., Jackson, July 3, 1996), a murder case, we reviewed a defendant's claim that he should have been allowed to introduce a statement made by a non-testifying co-defendant to her psychologist. In the statement, the co-defendant indicated that she killed the victim in self-defense. *Id.*, slip op. at 2. "The trial judge refused to allow the psychologist to testify as to Ms. Miles'[s] statement" and "held that the statement was hearsay and did not fall within a recognized exception." *Id.*, slip op. at 3. This court stated, "In addressing the 804(b)(3) exception, the trial judge found that *when taken in context* with all of Ms. Miles'[s] prior statements, the statement was self-serving and supported a self-defense posture." *Id.* (emphasis added). The trial court had, therefore, "concluded that the statement was not against [the declarant's] penal interest," and this court agreed that "the statement does not fall within . . . the proffered exception[]." *Id.*

Similarly considering the context of Finley's pretrial statement, we hold that the proffered statement was hearsay and did not meet the requirements of Tennessee Rule of Evidence 804(b)(3). As such, it was properly excluded.

### III. Severance of Defendants

In his next issue, the defendant challenges the trial court's order of severance of the trial of co-defendant Robert Finley from that of the defendant. On the morning of the first day of trial, the trial judge informed the parties, in response to the State's motion to consolidate the offenses charged in four indictments, that the court would grant the consolidation motion only if the State acceded to a severance of the defendants. The State opted to sever the trial of Finley from that of the defendant, and over the objection of the defendant, the trial court severed the trial of Finley and postponed it. The court proceeded with the trial of the defendant on the four, consolidated indictments.

On appeal, the defendant claims that the State's "motion" to sever defendants was untimely and that it prohibited the defendant from using the "joint defense strategy previously discussed with the co-defendant." The State counters that the trial court did not abuse its discretion in ordering the severance of Finley's trial from that of the defendant. We agree with the State.

A. Standard of Review

The decision to sever criminal co-defendants is wholly within the discretion of the trial court, *State v. Maddox*, 957 S.W.2d 547, 556 (Tenn. Crim. App. 1997); *State v. Little*, 854 S.W.2d 643, 648 (Tenn. Crim. App. 1992), and it may not be set aside absent "clear abuse," *State v. Howell*, 34 S.W.3d 484, 491 (Tenn. Crim. App. 2000).

B.  Form and Timing of Motion.

In our view, the State essentially moved to sever the trial of Finley from the defendant's trial. The pretrial hearing began with the State's motion to consolidate charges. Because Finley was a co-defendant on only some of the charges, the trial judge expressed his reluctance to consolidate the charges unless Finley's trial were severed from that of the defendant. The State then opted for the severance of co-defendants.

Obviously, the "motion" to sever the trials of the co-defendants was made orally on the morning of the first day of trial. As was the case with the State's motion to consolidate the charges, the defendant claims that the motion should have been made in writing prior to the first day of trial. *See* Tenn. R. Crim. P. 14(c)(2)(B) (prescribing the standard for adjudicating *before trial* a prosecution motion to sever the trials of co-defendants). However, as was also the case with the previously addressed motion, the trial court authorized the oral motion by allowing it. *See* Tenn. R. Crim. P. 47(b).

The claim of a late motion to sever co-defendants addresses the same issue at stake in other late-arising changes in a trial format – that of surprise. *See, e.g., State v. Allen*, 976 S.W.2d 661, 667 (Tenn. Crim. App. 1997) (commenting that the requirement of Tennessee Code Annotated section § 40-17-106 that prosecution list names of trial witnesses on the indictment is "to prevent surprise to the defendant at trial and to permit the defendant to prepare his or her defense"). However, "surprise" in this sense means more than "unexpected"; a defendant cannot claim surprise unless, through notice and more preparation time, he could have reacted to the new event by changing his course of action at trial. A surprise is typically remedied, not by barring a new development that is otherwise a matter of proper advocacy, but by granting a continuance if the defendant asks for one. *See, e.g., State v. Terry Dean Sneed*, No. 03C01-9702-CR-00076, slip op. at 14 (Tenn. Crim. App., Knoxville, Nov. 5, 1998) (in adjudicating a claim that the trial court erroneously allowed a late amendment to an indictment, applying general rule that "[w]hen a defendant experiences actual surprise at trial resulting from an amendment to an indictment, a defendant should move for a continuance so as to allow time to prepare a defense to the new charges"). Even though the State's motion in the present case should have been made "before trial," the defendant articulated no claim that his trial preparation could have been ameliorated had the severance of Finley's trial happened earlier. He merely argued that the State's eyewitnesses might be more hesitant in identifying the defendant in court if two defendants were present. Moreover, he failed to seek a continuance. Thus, any error in the trial court's adjudicating the State's day-of-trial motion to sever the trial of Finley was harmless. *See* Tenn. R. Crim. P. 52(a) (prohibiting reversal based on error unless the error "affirmatively appear[s] to have affected the result of the trial on the merits").

C.  Merits of Severance; Applicable Law

The pretrial severance of co-defendants is governed by Tennessee Rule of Criminal Procedure 14(c)(2): "On motion of the State . . . , the court shall grant a severance of defendants if:

-13-

(A) before trial, the court finds a severance necessary . . . to promote a fair determination of the guilt or innocence of one or more defendants . . . ." Tenn. R. Crim. P. 14(c)(2)(A).

In the present case, the defendant claims that the severance of Finley's trial precluded a fair determination of the defendant's guilt or innocence because, in a joint trial, Finley's pretrial "statement would have been introduced by the Prosecution," whereas following the severance, the trial court excluded from evidence Finley's pretrial statement.

Before adjudicating this issue, we point out that the defendant did not rely upon this "new" claim of prejudice when he objected to the pretrial severance motion, although he did assert the new ground in his argument on his motion for new trial. Normally, a party may not use on appeal a different basis for objecting to a trial-court action from the one he cited when the objection was made. *See* Tenn. R. App. P. 36(a) (disavowing rule support for granting relief to a party "who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). Our supreme court has said,

> In this jurisdiction, a party is bound by the ground asserted when making an objection. The party cannot assert a new or different theory to support the objection in the motion for a new trial or in the appellate court . . . .
>
> When, as here, a party abandons the ground asserted when the objection was made and asserts completely different grounds in the motion for a new trial and in this Court, the party waives the issue.

*State v. Adkisson*, 899 S.W.2d 626, 635 (Tenn. Crim. App. 1994). Of course, in *Adkisson*, the action challenged on appeal was the admission of evidence. To challenge such a ruling on appeal, the appellant is required by rule not only to enter a contemporaneous objection, but also to state the "specific ground of objection if the specific ground was not apparent from the context." *See* Tenn. R. Evid. 103(a)(1). In the present case, the defendant challenges the trial court's severing the trials of co-defendants upon motion of the State; no rule specifically requiring an "objection" applies to this action. Moreover, the purpose of above-quoted portion of Tennessee Rule of Appellate Procedure 36(a) is arguably satisfied when the aggrieved party presents his new ground to the trial court in the motion for new trial, as did the defendant in the present case. These considerations influence us to conclude that the defendant may raise his new ground for opposing the severance on appeal, despite that he did not present it to the trial court at the time the severance action was being considered. On the other hand, as we have explained in a preceding issue in this opinion, appellate consideration of a trial court's action in severing *offenses* is confined to the matters presented to the trial court in the pretrial severance hearing. *See Spicer*, 12 S.W.3d at 445. This knowledge influences us to ask whether the same rule should apply to pretrial motions to sever *defendants*.

We, however, merely identify these issues, perhaps for future adjudication. The bottom line in the present case is that, even if we do review the defendant's claim on its merits and

even if we agreed that on appeal the defendant has articulated a basis for denying the severance, the severance of Finley's trial dwelled well within the ambit of the trial court's discretion, and no abuse of discretion is indicated, especially when the issues of fairness to co-defendant Finley himself are factored. Pursuant to Rule of Criminal Procedure 14(c)(2)(A), the trial court, which initially presided over a joint criminal proceeding against the defendant and Finley, was required to sever the co-defendants' trials if it found the severance was "appropriate to promote a fair determination of guilt or innocence of *one or more defendants*." Tenn. R. Crim. P. 14(c)(2)(A) (emphasis added). Because Finley was not charged in all of the four indictments, the trial court determined that, given consolidated indictments, fairness could be afforded Finley only if his trial was severed from that of the defendant. We cannot say that the decision exceeded the trial court's discretion.

Furthermore, we point out that Finley's pretrial statement, the admission of which is the core of the defendant's present claim to a joint trial, was not as exculpatory as the defendant seems to believe. In his statement, Finley essentially stated only that he did not *see* the defendant with a gun or anything resembling a gun during the August 27 offense. To put a fine point on it, this statement does not avow that the defendant *had* no gun. Even had he gained admission of the statement through a joint trial or otherwise, we cannot imagine the statement leading to a different result at trial. In other words, any error in denying a severance because it may have resulted in limitations on the defendant's presentation of evidence was harmless. *See* Tenn. R. Crim. P. 52(a).

## *IV. Sufficiency of the Evidence*

In his next issue, the defendant claims that the evidence supporting the convictions is legally insufficient. He posits two specific complaints: (1) The credibility of the various eyewitnesses was suspect due to prevailing lighting conditions, and (2) the State failed to proved that a deadly weapon was used in the aggravated robbery cases.

When an accused challenges the sufficiency of the evidence, an appellate court inspects the evidentiary landscape, including the direct and circumstantial contours, from the vantage point most agreeable to the prosecution. The reviewing court then decides whether the evidence and the inferences that flow therefrom permit any rational fact finder to conclude beyond a reasonable doubt that the defendant is guilty of the charged crime. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985). In determining sufficiency of the proof, the appellate court does not replay or reweigh the evidence. *See State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Witness credibility, the weight and value of the evidence, and factual disputes are entrusted to the finder of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Simply stated, the reviewing court will not substitute its judgment for that of the trier of fact. Instead, the court extends to the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences that may be drawn from the evidence. *Cabbage*, 571 S.W.2d at 835.

-15-

"Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a) (2003). For purposes of the indictments for aggravated robbery, that offense is committed by one who accomplishes robbery "with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." *Id.* § 39-13-402(a)(1).

We easily dispose of the defendant's general challenge to the witnesses' efficacy in identifying the defendant as the offender. On each charge, the State's testimonial evidence, if believed by the jury, established that the defendant was the perpetrator. It was the jury's prerogative to believe these witnesses and to reject the conflicting testimony of the defendant. We may not disturb those determinations of the trier of fact.

We turn now to the defendant's claims that the State failed to prove the elements of each charged offense. To review, the defendant was convicted of the robberies of Mr. Crain (July 11, 2003) and Mr. Shears (August 5, 2003) and was convicted of the aggravated robberies of Mr. Yarbrough (August 13, 2003) and Mr. Mitchell (August 27, 2003).

A. Herbert Crain (robbery, July 11, 2003)

Herbert Crain testified that the defendant entered his truck trailer and told him to leave. Mr. Crain left the trailer, and the defendant started moving cases of cigarettes. When asked whether the defendant did or said anything else, Mr. Crain replied, "No, not really . . . . He was not really speaking that much at all." Mr. Crain testified, "I was going to attempt to close him up inside the trailer, but he caught me." When asked whether he was afraid, Mr. Crain testified, "I really wasn't afraid. I was more concerned . . . that if something happened to me, my kids would be without a father." The ensuing testimony is as follows:

> Q [W]hat happened then?
> A He caught me trying to sneak my way over to the door, and he told me that if I tried that again, he would shoot me.
> Q And so he told you that he would shoot you?
> A Yes.
> Q And at this point, were you afraid?
> A No, not really, I was still just mad that it was happening.
> Q Now, did you ever see a weapon?
> A No, I did not. He did not actually brandish it at all.
> Q Did you think that he had a weapon?
> A I knew there was a strong possibility.
> Q And why did you think there was a possibility?
> A Because our company was robbed on a regular basis, and there had been several of the other drivers [who] had brought guns out into the situation.

Q    But in this particular instance, did you see anything that
     indic[ated] that he had a weapon other than what he told you?
A    Other than him just reaching for his pocket that was all I saw.
Q    Okay.  But you did see him reach for his pocket?
A    Well, putting his hand low.  I wouldn't have known if it was
     actually at his pocket or in his belt line, it was in that general
     vicinity that he had reached.

This testimony is devoid of any proof that the defendant either obtained property from Mr. Crain by violence or by putting him in fear.  If a victim is put in fear by the action of a defendant, at some point the victim's testimony should establish that he was afraid.  Mr. Crain disavowed being in fear.  Also, he articulated no action on the part of the defendant that may fairly be characterized as violent.  As such, the evidence was insufficient to establish the July 11, 2003 robbery of Mr. Crain.  The conviction of that robbery must be reduced to theft. *See State v. Bowles*, 52 S.W.3d 69, 79 (Tenn. 2001) ("It is uncontested that theft is a lesser-included offense of robbery.").  Because the State did not establish the value of the goods taken in the July 11, 2003 theft, we have no basis for grading the offense above the minimum grade for goods valued at $500 or less, a Class A misdemeanor.

B.  Gabriel Shears (robbery, August 5, 2003)

Mr. Shears testified that, at a BP store on August 5, 2003, he was loading a dolly when he saw the defendant and another man drive up.  The defendant entered the Forrest City Grocery truck trailer and began to remove cases of cigarettes. The truck driver, Keith Richardson, was inside the trailer, and Mr. Shears heard the defendant tell Mr. Richardson to "get back" and saw the defendant "tussling" with Mr. Richardson.  Mr. Shears saw the defendant grab at his pocket, and Mr. Shears testified that he was afraid at that point because he thought the defendant had a gun.

In the light most favorable to the State, this testimony establishes both that the defendant put Mr. Shears in fear and that, through his commands and tussling with Mr. Richardson, the defendant robbed either Mr. Shears or Mr. Richardson by violence.[7]

C.  Willis Yarbrough (aggravated robbery, August 13, 2003)

Mr. Yarbrough testified that, while he was working in the cargo area of his H.T. Hackney truck at a Walgreen's on August 13, 2003, the defendant entered the truck and proceeded to remove cigarettes from the truck.  Mr. Yarbrough testified that he saw the defendant with a gun and that he was afraid.

_____

[7]The State sought and obtained two separate convictions of the robbery of each of the various victims via a charge in each case that alleged "by violence" and a charge that alleged "by putting the [victim] in fear."  The resulting dual convictions were merged.  In the case of the August 5 BP robbery, not only were separate charges as to the mode of the robbery submitted to the jury, but the State also presented separate charges naming Mr. Shears as the victim and charges naming Mr. Richardson as the victim.  These resulting convictions were also merged.

This evidence supports the defendant's resulting conviction of aggravated robbery. The robbery, committed via putting the victim in fear, was aggravated by the defendant's possession of a deadly weapon.

D.  DeAngelo Mitchell (aggravated robbery, August 27, 2003)

Mr. Mitchell testified that, while he was working inside his Forrrect City Grocery trailer at Yung's Food Market, the defendant entered the trailer with a gun and told Mr. Mitchell not to move.  Mr. Mitchell testified that he was afraid.

As in the case of Mr. Yarbrough, this evidence supports the conviction of aggravated robbery.

In conclusion, the evidence supports the convictions of aggravated robbery and one conviction of robbery.  The conviction of the July 11, 2003 robbery must be reduced to Class A misdemeanor theft.

## V. The Defendant's Position in the Courtroom

In his next issue, the defendant claims that the trial court erred in refusing to allow him to sit through the trial at the counsel table, next to his attorney.  He had been assigned a seat immediately behind his attorney, who sat at the counsel table.  Prior to trial, he moved the court to allow him to sit at the table with counsel, but the trial judge denied the motion, saying, "It's been my practice not to allow that. . . .  That's the way we do it."

On appeal the defendant neither articulated any prejudice from the trial court's action nor cited any authority for his claim.   Because no authority was cited to support his argument, the issue has been waived on appeal.  *See* Tenn. R. Ct. Crim. App. 10(b).

## VI.  Omission of a Jury Instruction Relative to Identification Testimony

In this issue, the defendant claims that the trial court failed to adequately instruct the jury about the perils of identification testimony, as mandated by *State v. Dyle*, 899 S.W.2d 607 (Tenn. 1995).

In *Dyle*, our supreme court nodded to the possible shortcomings of identification testimony and promulgated the following instructions to be used when identification is an issue in a criminal case:

> One of the issues in this case is the identification of the defendant as
> the person who committed the crime.  The state has the burden of
> proving identity beyond a reasonable doubt. Identification testimony
> is an expression of belief or impression by the witness, and its value

-18-

may depend upon your consideration of several factors. Some of the factors which you may consider are:

(1) The witness' capacity and opportunity to observe the offender. This includes, among other things, the length of time available for observation, the distance from which the witness observed, the lighting, and whether the person who committed the crime was a prior acquaintance of the witness;

(2) The degree of certainty expressed by the witness regarding the identification and the circumstances under which it was made, including whether it is the product of the witness' own recollection;

(3) The occasions, if any, on which the witness failed to make an identification of the defendant, or made an identification that was inconsistent with the identification at trial; and

(4) The occasions, if any, on which the witness made an identification that was consistent with the identification at trial, and the circumstances surrounding such identifications.

Again, the state has the burden of proving every element of the crime charged, and this burden specifically includes the identity of the defendant as the person who committed the crime for which he or she is on trial. If after considering the identification testimony in light of all the proof you have a reasonable doubt that the defendant is the person who committed the crime, you must find the defendant not guilty.

*Dyle,* 809 S.W.2d at 612.

The defendant in the present case argues that the jury instructions on identification that appear in the transcript of the trial proceedings are at variance with the copy of the written instructions that appear in a compilation prepared by the trial court clerk. However, we have reviewed the two sets of instructions that appear in the record and find that they are substantially identical. In the written instructions appended to the record, the last paragraph of the instruction says, per *Dyle*, "Again, the state has the burden of proving every element of the crime charged, and this burden *specifically includes* the identity of the defendant . . . ." (Emphasis added.) The same sentence in the transcript omits the highlighted phrase and reads, "Again, the state has the burden of proving every element of the crime charged including the identity of the defendant . . . ." Thus, under either version, the trial court imparted the prescribed *Dyle* instruction, verbatim or substantially verbatim, to the jury. We discern no error.

*VII. Sentencing*

In his last issue, the defendant claims that the trial court erred in ordering the consecutive service of the four sentences. The trial court imposed a Range III, ten-year sentence on each of the merger-surviving convictions of robbery and a Range II, 17-year sentence on each of the merger-surviving convictions of aggravated robbery. The court ordered consecutive alignment of all sentences, thereby creating an effective sentence of 54 years.

When there is a challenge to the manner of service of a sentence, it is generally the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2003). This presumption, however, is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appellant, and in the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. *Id.* If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Tennessee Code Annotated section 40-35-115 enumerates the bases upon which a trial court may order consecutive sentences. The portions of that section that are germane to the present case are as follows:

> (a) If a defendant is convicted of more than one (1) criminal offense, the court shall order sentences to run consecutively or concurrently as provided by the criteria in this section.
>
> (b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:
>
> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> . . . .
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

-20-

. . . .

> (c) The finding concerning the imposition of consecutive or concurrent sentences is appealable by either party.
>
> (d) Sentences shall be ordered to run concurrently, if the criteria noted in subsection (b) are not met, unless consecutive sentences are specifically required by statute or the Tennessee Rules of Criminal Procedure.

T.C.A. § 40-35-115 (2003). "The sentence imposed should be no greater than that deserved for the offense," *id.* § 40-35-103(2), and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," *id.* § 40-35-115(4).

In the present case, the trial court determined that the defendant was a professional criminal, *see id.* § 40-35-115(b)(1), that his record of criminal activity was extensive, *see id.* § 40-35-115(b)(2), and that he was a dangerous offender, *see id.* § 40-35-115(b)(4).

The trial court's determination that the defendant was a professional criminal is certainly suggested, although not forcefully supported, in the record, and the determination that the defendant was a dangerous offender is even less supported. We, however, need not belabor the aptness of these findings because "[o]nly one factor need be proven to support . . . consecutive sentenc[ing]." *State v. Kenneth Paul Dykas*, No. M2000-01665-CCA-R3-CD, slip op. at 16 (Tenn. Crim. App., Nashville, Mar. 5, 2002). We hold that the defendant's record of criminal convictions is so extensive that the trial court was warranted in ordering consecutive sentencing on that basis alone. Prior to the offenses in the present case, the defendant had garnered six convictions of misdemeanor theft, a conviction of felony theft, two convictions of evading arrest, one conviction of resisting arrest, four convictions of drivers' license offenses, two misdemeanor and two felony convictions of drug-related offenses, a felony forgery conviction, a conviction of malicious mischief, two convictions of failure to appear, one weapons-possession conviction, and two convictions of disorderly conduct. This record supports the trial court's consecutive alignment of offenses.

Finally, we impose a sentence of 11 months, 29 days for the theft conviction that replaces one of the robbery convictions via this opinion.

### *Conclusion*

In conclusion, we reverse the robbery conviction that was based upon the July 11, 2003 incident involving Mr. Crain, and in its place, we impose a Class A misdemeanor conviction of theft and impose a sentence of 11 months and 29 days to run consecutively to the remaining sentences in this case. We affirm all other convictions and sentences.

-21-

_____
JAMES CURWOOD WITT, JR., JUDGE